

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

April 4, 1959

Mr. I. Predecki
County Auditor
Galveston County
Galveston, Texas

Dear Sir:

The Opinion
Overruled by
# O.6032
An oo for ar it conflicts

Opinion No. O-843

Re: Can Galveston County expend tax funds
derived from existing laws for pre-
liminary expenses in connection with
the construction of a bridge or tunnel
from Galveston Island to Bolivar Peninsula,
if such funds were available for this
purpose; if not, would a local bill by
the Legislature, authorizing the Com-
missioners' Court to levy a tax making
the sum available for this purpose be
constitutional with or without a vote
of the taxpayers?

Your request for an opinion on the above stated
question has been received by this office.

Counties, being a component part of the state,
have no powers or duties except those which are clearly
set forth and defined in the Constitution and statutes.
The statutes have clearly defined the powers, prescribed
the duties, and imposed the liabilities of the Commission-
ers' Court, the medium through which the different counties
act, and from those statutes must come all the authorites
vested in the counties. (Edwards County vs. Jennings, 33
SW 585, Tex. Jur. Vol. 11, page 563).

Section 9, Article 8 of the Texas Constitution
prescribed the maximum rate of taxes for general purposes,
for roads and bridges, for juries, and for permanent im-
provements, respectively. The Commissioners' Court has

no power to transfer money from one fund to another or to expend for one purpose, tax money raised ostensibly for another purpose. The immediate purpose of the provision is to limit the amount of taxes that may be raised for these several purposes, respectively; but it is also designed to inhibit excessive expenditures for any such purpose, and to require that any and all moneys raised by taxation for any purpose shall be applied to that particular purpose and to no other. Ault vs. Hill County, 116 SW 359, Commissioners' Court of Henderson County vs. Burk, 262 SW 94, Carroll vs. Williams, 202 SW 504. Tex. Jur. Vol. 11, page 609.

The Supreme Court of Texas in the case of Carroll vs. Williams, 202 SW 504, supra, used the following language:

"Section 9 of Article 8 of our State Constitution, inhibits any and all transfers of tax money from one to another of several classes of funds therein authorized, and, as sequence, the expenditure, for one purpose therein defined, of tax money raised ostensibly for another such purpose. The immediate purpose in so prescribing a separate maximum tax rate for each of the classes of purposes there enumerated is, no doubt, to limit, accordingly, the amount of taxes which may be raised from the people, by taxation, declaredly for those several purposes or classes of purposes, respectively but that is not all; the ultimate and practical and obvious design and purpose and legal effect is to inhibit excessive expenditures for any such purpose or class of purposes. By necessary implication said provisions of Section 9 of Article 8 were designed, not merely to limit the tax rate for certain therein designated purposes, but to require that any and all money raised by taxation for any such purpose shall be applied, faithfully, to that

particular purpose, as needed therefor, and
not to any other purpose or use whatsoever.
Those constitutional provisions control, not
only the raising, but also the application,
of all such funds; and such is t'e legal
effect of Article 2242, (now Article 2352) and
Article 7357 (now Article 7048) of the Revised
Civil Statutes, when properly construed and
applied.  True, the Constitution does not say,
in so many words, that money raised by the
county, city or town, by taxation for one such
purpose shall never be expended for any other
purposes, not even for another of the five
general classes of purposes defined and ap-
proved in said Section 9 but that, we think,
is its plain and certain meaning and legal
effect.  The very definition of those several
classes of purposes, and the declaration of
authority to tax the people therefor, respective-
ly, coupled, as they are, in each instance,
with the limitation of the tax rate for that
class, must have been predicated upon the
expectation and intent that, as a matter of
common honesty and fair dealing, tax money
taken from the people ostensibly for one speci-
fied purpose shall be expended, as needed,
for the purpose alone, as well as the tax
rate for that particular class, in any one
year, shall not exceed the prescribed maximum."

Section 52 of Article 3 of the State Constitu-
tion reads as follows:

'The Legislature shall have no power
to authorize any county, city, town or
other political corporation or sub-division
of the state to lend its credit or to grant
public money or thing of value in aid of,
or to any individual, association or corpora-
tion whatsoever; or to become a stockholder
in such corporation, association or company;
provided, however, that under legislative

Mr. I. Frdecki, April 4, 1939, Page 4

provision any county, any political subdivision of a county, any number of adjoining counties, or any political subdivision of the state, or any defined district now or hereafter to be described and defined within the state of Texas, and which may or may not include, towns, villages or municipal corporations, upon a vote of a two thirds majority of the resident property taxpayers voting thereon who are qualified electors of such district or territory to be affected thereby, in addition to all other debts, may issue bonds or otherwise lend its credit in any amount not to exceed one-fourth of the assessed valuation of the real property of such district or territory, except that the total bonded indebtedness of any city or town shall never exceed the limits imposed by other provisions of this Constitution, and levy and collect such taxes to pay the interest thereon and provide a sinking fund for the redemption thereof, as the Legislature may authorize, and in such manner as it may authorize the same, for the following purposes to-wit:

"(a) The improvement of rivers, creeks, and streams to prevent overflows, and to permit of navigation thereof or irrigation thereof, or in aid of such purposes.

"(b) The construction and maintenance of pools, lakes, reservoirs, dams, canals and waterways for the purpose of irrigation, drainage or navigation, or in aid thereof.

"(c) The construction, maintenance and operation of macadamized, graveled or paved roads and turnpikes, or in aid thereof."

Article 785, Revised Civil Statutes, provides that:

"The county commissioners' court of any county having a population in excess

Mr. I. Fredecki, April 4, 1939, Page 5

of 50,000 inhabitants, according to the last
United States census, may in their discretion,
order an election to determine the propriety
of a bond issue to provide for the construction
and maintenance of causeways, viaducts, bridges
and approaches across any river and bottoms
within the limits of such county, irrespective
of any municipal boundaries." See the case of
Aransas County vs. Coleman-Fulton Pasture Co.,
191 SW 553.

We are informed by the Comptroller's office
that Galveston County has a population of 64,401 in-
habitants according to the last Federal census, there-
fore, coming within the population brackets set forth
in the above quoted statute.

In view of the foregoing authorities, you are
respectfully advised that it is the opinion of this De-
partment that Galveston County may expend moneys from
the road and bridge fund of the county for preliminary
expenses in connection with the construction of a bridge
or tunnel from Galveston Island to Bolivar Peninsula
if such funds are available, but that Galveston County
does not have the authority to expend tax funds derived
by virtue of existing laws from any of the other funds
of the county for the preliminary expenses in connection
with the construction of a bridge or tunnel from Galveston
Island to Bolivar Peninsula.

You are further advised that it is our opinion
that the County Commissioners' Court of Galveston County
may, in their discretion, order an election to determine
the propriety of a bond issue to provide for the construc-
tion and maintenance of a bridge from Galveston Island to
Bolivar Peninsula, in compliance and under the provisions
of Chapter 4, Title 22 of the Revised Civil Statutes.

Trusting that the foregoing answers your in-
quiry, we remain

Very truly yours

ATTORNEY GENERAL OF TEXAS

By Ardell Willia———

Ardell Williams
Assistant

AW:AW

APPROVED: